IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

_____
                                              :
REGINA CALHOUN,                               :
                                              :        CIVIL ACTION
                           Plaintiff          :
          v.                                  :        NO. 13-5220
                                              :
CAROLYN W. COLVIN, ACTING                     :
COMMISSIONER OF SOCIAL SECURITY,              :
                                              :
                           Defendant          :
_____:

**Henry S. Perkin, M.J.**                                      **September 16, 2015**

## REPORT AND RECOMMENDATION

Plaintiff, Regina Calhoun ("Plaintiff"), brings this action under 42 U.S.C. § 1383(c)(3), which incorporates 42 U.S.C. § 405(g) by reference, to review the final decision of the Commissioner of Social Security ("Defendant"), denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") provided under Titles II and XVI of the Social Security Act ("the Act").  42 U.S.C. §§ 401-433; 42 U.S.C. §§ 1381-1383f.  Subject matter jurisdiction is based upon section 205(g) of the Act.  42 U.S.C. § 405(g).  Presently before this Court is Plaintiff's Motion for Summary Judgment and Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment; and Defendant's Response to Request for Review by Plaintiff.  For the reasons that follow, it is recommended that the relief sought by Plaintiff be denied, and the decision of the Commissioner of Social Security be affirmed.

I.  **PROCEDURAL HISTORY**

In June 2010, Plaintiff protectively filed applications for DIB and SSI, alleging disability since December 1, 2008, as a result of sarcoidosis.  (Record at 31, 72, 169-177, 178-179, 182, 189, 193.)  Other impairments noted in the record include the following: obesity, acid reflux, obstructive sleep apnea, major depression, anxiety disorder, glaucoma, and fibromyalgia.  (Record at 15, 31, 34-36, 40, 42-43, 46-49, 50-51, 53-55, 56, 58-61, 72-73, 74, 79, 169-177, 178-179, 182, 189, 193, 195-197, 215, 222, 287, 296, 302-303, 323, 335, 345, 376, 436-437.)  Plaintiff's earnings record shows that she has acquired sufficient quarters of coverage to remain insured through December 31, 2011, which is referred to as the date last insured.  (Record at 32-33, 182, 189, 215.)  Accordingly, in order to be eligible for DIB benefits, Plaintiff must prove that she became disabled on or before December 31, 2011.

Plaintiff's claim for disability benefits was denied at the initial review level by letter dated December 21, 2010.  (Record at 71, 74-78, 79-83.)  Thereafter, Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ").  (Record at 84, 86-87, 88-90.)  A hearing was held on January 9, 2012, at which Plaintiff, who was represented by counsel, appeared and testified.  (Record at 29, 31, 33-63, 68-70, 98-99, 167-168.)  An impartial vocational expert ("VE"), Patricia Scutt, also appeared and testified at the administrative hearing.  (Record at 29, 31, 64-68, 156-157, 165-166.)

Having considered evidence of Plaintiff's impairments, the ALJ issued an unfavorable decision on January 27, 2012 in which he found that Plaintiff, given her age, education, work experience, and residual functional capacity, was capable of performing a significant number of jobs in the regional and national economies.  (Record at 13-24, Finding

Nos. 5-10.) Thus, the ALJ concluded that Plaintiff could not be found disabled within the meaning of the Social Security Act. (Record at 13, 24, Finding No. 11.)

Plaintiff timely requested review of the ALJ's decision, which was denied by the Appeals Council on July 5, 2013. (Record at 1-3, 7, 8-9.) As a result, the ALJ's decision of January 27, 2012 became the final decision of the agency.

Plaintiff initiated this civil action September 6, 2013, seeking judicial review of the Commissioner's decision that she was able to perform a significant number of jobs in the regional and national economies, and thus was not entitled to DIB or SSI. The matter was subsequently referred to this Magistrate Judge for preparation of a report and recommendation on November 24, 2014.

## II.    FACTS

Plaintiff, born on April 10, 1968, was forty-two years old[1] when she protectively filed her applications for DIB and SSI. (Record at 31, 33, 72-73, 169-177, 178-179, 182, 189, 215.) She has a high school education, and relevant past work experience as a pharmaceutical packer, line leader, and customer service representative. (Record at 36-41, 65, 71, 72-73, 180-188, 193, 194-195, 199-200, 223-224.) At the time of the hearing, Plaintiff testified that she was received welfare assistance and food stamps, and resided with her mother and daughters. (Record at 57, 206.) She alleges disability since December 1, 2008, as a result of sarcoidosis. (Record at 31, 72, 169-177, 178-179, 182, 189, 193.) Other impairments noted in the record

---

[1] Because Plaintiff qualified as a "younger person" under the regulations, her age is not considered a significant impediment to adapting to new work situations. 20 C.F.R. § 416.963(b)(2000). The Court must "cautiously scrutinize the employment prospects of so young an individual before placing [her] on the disability rolls." Lockley v. Barnhart, No. 05-5197, 2006 U.S. Dist. LEXIS 29722, at *2 n.1 (E.D. Pa. May 16, 2006)(Baylson, J.), quoting, McLamore v. Weinberger, 530 F.2d 572, 574 (4th Cir. 1976).

include the following: obesity, acid reflux, obstructive sleep apnea, major depression, anxiety disorder, glaucoma, and fibromyalgia. (Record at 15, 31, 34-36, 40, 42-43, 46-49, 50-51, 53-55, 56, 58-61, 72-73, 74, 79, 169-177, 178-179, 182, 189, 193, 195-197, 215, 222, 287, 296, 302-303, 323, 335, 345, 376, 436-437.) The ALJ recognized the following impairments as being severe: sarcoidosis, obesity, major depression, and anxiety disorder. (Record at 15, Finding No. 3.)

In addition to reviewing the transcript of the administrative hearing and the administrative decision in this case, this Court has independently and thoroughly examined all of the medical records and disability reports. We will not further burden the record with a detailed recitation of the facts. Rather, we incorporate the relevant facts in our discussion below.

### III.     LEGAL STANDARD

The role of this Court on judicial review is to determine whether there is substantial evidence in the administrative record to support the Commissioner's final decision. Any findings of fact made by the Commissioner must be accepted as conclusive, provided that they are supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence" is deemed to be such relevant evidence as a reasonable mind might accept as adequate to support a decision. Richardson v. Perales, 402 U.S. 389, 407 (1971), quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). See also, Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 113 S.Ct. 1294 (1993). Thus, the issue before this Court is whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence. Moreover, apart from the substantial evidence inquiry, a reviewing court must also ensure that the ALJ applied the proper legal standards in evaluating a claim of

4

disability.  Coria v. Heckler, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents [her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. § 423(d)(1).  Each case is evaluated by the Commissioner according to a five-step process:

> The sequence is essentially as follows: (1) if the claimant is currently engaged in substantial gainful employment, she will be found not disabled; (2) if the claimant does not suffer from a "severe impairment," she will be found not disabled; (3) if a severe impairment meets or equals a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 and has lasted or is expected to last continually for at least twelve months, then the claimant will be found disabled; (4) if the severe impairment does not meet prong (3), the Commissioner considers the claimant's residual functional capacity ("RFC") to determine whether she can perform work she has done in the past despite the severe impairment - if she can, she will be found not disabled; and (5) if the claimant cannot perform her past work, the Commissioner will consider the claimant's RFC, age, education, and past work experience to determine whether she can perform other work which exists in the national economy.  See id. § 404.1520(b)-(f).

Schaudeck v. Comm'r of Social Sec. Admin., 181 F.3d 429, 431-32 (3d Cir. 1999).

## IV. ALJ DECISION AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff is alleging disability since December 1, 2008, as a result of sarcoidosis. (Record at 31, 72, 169-177, 178-179, 182, 189, 193.)  Other impairments noted in the record include the following: obesity, acid reflux, obstructive sleep apnea, major depression, anxiety disorder, glaucoma, and fibromyalgia.  (Record at 15, 31, 34-36, 40, 42-43, 46-49, 50-51, 53-55, 56, 58-61, 72-73, 74, 79, 169-177, 178-179, 182, 189, 193, 195-197, 215, 222, 287, 296, 302-

303, 323, 335, 345, 376, 436-437.)  The ALJ, however, proceeded through the sequential evaluation process and determined that Plaintiff was not disabled as a result of her impairments.[2]

In her memorandum of law in support of her motion for summary judgment, Plaintiff questions whether the ALJ's findings and conclusions of law were supported by substantial evidence.  More specifically, Plaintiff asserts the following issues for review:

> A.  Whether Substantial Evidence Did Not Support the ALJ's Determinations Because the Plaintiff Did Not Have a Full and Fair Hearing under the Regulations?
>
> B. Whether the Commissioner Erred at Step Two of the Five Step Sequential Analysis in Finding That Plaintiff Did Not Meet Her Burden of Proving Her Obesity and Obstructive Sleep Apnea Were Severe Impairments as Defined under the Code of Federal Regulations and Interpreted by its Own Policy Interpretations as Well as the Supreme Court, and Failed to Consider Fibromyalgia or Her Chronic Pain?

(Pl. Br. at 2.)

The issue before this Court, however, is whether the Commissioner's final decision of "not disabled" should be sustained as being supported by substantial evidence.  Based on an independent review of the record and for the reasons that follow, we find that the ALJ has provided appropriate and adequate support for his decision.  Accordingly, we conclude that the

---

[2] The ALJ proceeded through all of the steps, finding that: (1) Plaintiff has not engaged in substantial gainful activity since December 1, 2008; (2) Plaintiff's sarcoidosis, obesity, major depression, and anxiety disorder are severe impairments; (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1; and (4) Plaintiff retains the residual functional capacity to perform sedentary work except that she must avoid exposure to excessive pollutants and temperature extremes, and is limited to performing simple, routine, repetitive tasks involving one to two step instructions and little independent judgment. (Record at 15-22, Finding Nos. 2-5.) The ALJ concluded that while Plaintiff is not capable of performing her past relevant work, there are a significant number of jobs that she can perform in the regional and national economies, based upon her age, education, work experience and RFC.  (Record at 22-24, Finding Nos. 6-10.)  Thus, the ALJ found Plaintiff was not disabled. (Record at 24, Finding No. 11.)

ALJ's decision is supported by substantial evidence of record. We will, therefore, recommend that Plaintiff's motion for summary judgment be denied.

V. **DISCUSSION**

Disability is not determined merely by the presence of impairments, but rather on the functional restrictions the impairments place on an individual. See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991). Plaintiff must establish that her impairments result in functional limitations so severe they preclude her from engaging in any substantial gainful activity. See Dupkunis v. Celebrezze, 323 F.2d 380 (3d Cir. 1963); Gardner v. Richardson, 383 F. Supp. 1 (E.D. Pa. 1974).

This Court has conducted an independent and thorough review of the record, and we find substantial evidence in support of the ALJ's decision. In this case, although Plaintiff alleges a combination of disabling impairments, she has failed to show that these impairments, alone or in combination, result in functional limitations that preclude substantial gainful activity. Plaintiff's reported daily activities, the lack of functional limitations established by objective evidence, and Plaintiff's lack of credibility support the ALJ's conclusion that Plaintiff is not entitled to benefits.

> A. **The ALJ Conducted a Full and Fair Hearing, and Appropriately Determined That Additional Medical Evidence Was Not Warranted.**

Plaintiff contends that because of her multiple severe impairments, the ALJ should have ordered a consultative examination or should have had a medical examiner testify at the hearing as to whether her combination of physical and/or mental impairments met or equaled a listing. (Pl. Br. at 4-8.)

The duty of an ALJ to consult a medical expert is discussed in Social Security Ruling 96-6p, 1996 WL 374180 (S.S.A. Jul. 2, 1996).[3] Although the ALJ (or the Appeals Council) is responsible for deciding the ultimate legal question of whether a particular listing is met or equaled, the judgment of a physician (or psychologist) designated by the Commissioner on the issue of equivalence on the evidence before the ALJ (or the Appeals Council) must be received into the record as expert opinion evidence and given appropriate weight. SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. Jul. 2, 1996).

The presence of a Disability Determination and Transmittal Form in the record ensures that consideration by a medical expert designated by the Commissioner has been given to the issue of medical equivalence. SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. Jul. 2, 1996). As further noted by SSR 96-6p, when an ALJ (or the Appeals Council) finds that an individual's impairment(s) is (are) not equivalent in severity to any listing, the requirement to receive expert opinion evidence into the record may be satisfied by the Disability Determination and Transmittal Form. SSR 96-6p, 1996 WL 374180, at *3 (S.S.A. Jul. 2, 1996). In this matter, we note that the administrative record contains two Disability Determination and Transmittal Forms, which forms were completed based on the expert opinion evidence of state agency physician Mark W. Bohn, M.D. (Record at 72, 73, 323-324, 325-329.) These forms satisfy the requirements of SSR 96-6p with respect to the necessity of expert opinion evidence on the issue of equivalence.

---

[3] "Although they lack the force of regulations, social security rulings are 'binding on all components of the Social Security Administration.'" Johnson v. Barnhart, 66 F. App'x 285, 289 (3d Cir. 2003) (quoting 20 C.F.R. § 402.35(b)(1)).

8

Although the regulations and the SSR 96-6p accord broad discretion to the ALJ to determine whether to order a medical expert consultation, when the record is inconclusive as to whether a claimant's impairments are equivalent to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, a medical expert should evaluate the impairments.  Diehl v. Barnhart, 357 F. Supp. 2d 804, 815 (E.D. Pa. 2005).  An ALJ must call upon a medical expert to obtain an updated medical opinion from a medical expert in the following circumstances:

> When no additional medical evidence is received, but in the opinion of the administrative law judge or the Appeals Council the symptoms, signs, and laboratory findings reported in the case record suggest that a judgment of equivalence may be reasonable; or
>
> When additional medical evidence is received that in the opinion of the administrative law judge or the Appeals Council may change the State agency medical or psychological consultant's finding that the impairment(s) is not equivalent in severity to any impairment in the Listing of Impairments.

SSR 96-6p, 1996 WL 374180, at *3-4 (S.S.A. Jul. 2, 1996).

Based on our review of the record, and despite Plaintiff's argument to the contrary, the record was not inconclusive as to whether her impairments were equivalent to an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  In this matter, the ALJ appropriately determined that there was sufficient evidence in the record to make a finding that Plaintiff did not have an impairment, singly or in combination, that met or medically equaled a listed impairment.  (Record at 16-20, Finding No. 4.)  Because there was sufficient evidence, we conclude that the ALJ was not required to obtain an updated opinion on the issue of medical equivalence.

In this matter, the ALJ considered the Listing under category 3.00 pertaining to Respiratory System, as well as Listing 12.04, Affective Disorders, and Listing 12.06, Anxiety-Related Disorders, before determining that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled a listed impairment. (Record at 16-20). In so doing, the ALJ thoroughly discussed clinical notes from Plaintiff's primary care physician, pulmonologist, rheumatologist, psychiatrist, and therapists, and detailed why the evidence demonstrated that her impairments, singly or in combination, did not medically equal a listed impairment. (Record at 16-20.) The ALJ also considered Plaintiff's obesity in combination, but noted that the Plaintiff had not established that her obesity had imposed any significant limitations on her ability to perform basic work activities. (Record at 17.) Based on our review of the record, we find that the ALJ appropriately developed the record with respect to the medical evidence, and thoroughly explained why he rejected medical evidence allegedly supporting Plaintiff's claimed limitations.

Moreover, as correctly noted by the Defendant Commissioner, aside from noting that she had, in fact, been diagnosed with obesity, depression, anxiety, and sarcoidosis that was characterized by joint pain and shortness of breath, Plaintiff failed to cite to any evidence as to why or how her combination of impairments met or equaled a listing.[4] (Def. Br. at 6, citing Pl. Br. at 4-8.) Further, Plaintiff has not specifically identified the listing(s), which she alleges she medically equals, let alone how she allegedly medically equals the aforesaid unspecified listing. As correctly noted by Defendant, absent an explanation as to how her conditions medically equal

---

[4] We note further that it is actually the Plaintiff who bears the burden of proof at step three. Poulos, 474 F.3d at 92.

a stated listing, Plaintiff's attack of the ALJ's step three determination is legally insufficient. (Def. Br. at 7, citing, Shinseki v. Sanders, 556 U.S. 396, 409 (2009) (plaintiff, as the moving party, bears the burden of showing that any legal error was harmful).

The ALJ has a well-established duty to provide an explanation for the reasons underlying his ultimate decision. See Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)("an administrative decision should be accompanied by a clear and satisfactory explication of the basis on which hit rests"); see also Young-El v. Apfel, 2000 WL 190237, *3 (E.D. Pa. Feb. 4, 2000)(quoting Cotter). Such explanation is essential to meaningful judicial review. Cotter, 642 F. 2d at 704. Cf. Burnett v. Commissioner, 220 F.3d 112, 119 (3d Cir. 2000) ("[t]his Court requires the ALJ to set forth reasons for his decision.").

In Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004), however, the Court of Appeals for the Third Circuit held that it is not necessary for the ALJ to use particular language or adhere to a particular format when conducting his step three analysis. Rather, the ALJ need only develop the record and explain the findings sufficiently enough in his decision to permit meaningful judicial review. Id. In Jones, the Court reviewed the ALJ's decision in its entirety and found that substantial evidence supported the ALJ's step three finding. Id. at 505 (stating that "the ALJ's decision, read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that Jones did not meet the requirements for any listing. . .").

We conclude that substantial evidence supports the ALJ's conclusion that Plaintiff's impairments do not meet or medically equal a listing. With respect to the Respiratory System listings under category 3.00, the ALJ noted that as of the alleged onset date of disability, Plaintiff was not involved in treatment for sarcoidosis, and although the condition was followed

by a pulmonologist, no treatment had been instituted. (Record at 16.) Given her multiple joint complaints, the ALJ noted that Plaintiff was referred to a rheumatologist who opined that although she had "most" fibromyalgia tender points, Plaintiff was well appearing, in no acute distress, had lungs clear to auscultation, and good range of motion of the extremities. (Record at 17.) There was no "evidence of an inflammatory arthritis or periarthritis on exam . . . to implicate sarcoid as the cause." (Record at 17.) Plaintiff's obesity was also considered, however, the ALJ found that Plaintiff had not established that her obesity imposed any significant limitations of her ability to perform basic work activities. (Record at 17.)

With respect to her mental impairments, the ALJ considered listings 12.04 and 12.06, noting that Plaintiff did not seek formal mental health treatment until April 2011. (Record at 17.) The ALJ noted that Plaintiff's sessions notes with therapists were in contrast, as were the findings of the psychiatrist, who did not consider Plaintiff's mental status to be as serious as that designated by certain therapists. (Record at 18.) Plaintiff failed to show for a number of therapy and psychiatric sessions, and when she did show up, her mental status examinations were generally benign. (Record at 18.)

Federal regulations provide that the determination that a particular medical or psychological condition "meets or equals" the requirements of a listed impairment is a medical judgment, made at the initial and reconsideration levels of administrative review by the Commissioner's designated physicians and consultative medical specialists. See 20 C.F.R. § 416.926. In this matter, state agency physician, Mark W. Bohn, M.D., reviewed Plaintiff's medical history and is trained to make the "meets or equals" determination. (Record at 72, 73, 323-324, 325-329.) On December 21, 2010, Dr. Bohn concluded that Plaintiff's impairments did

not meet or medically equal any listed impairment. (Record at 72, 73, 323-324, 325-329.) He also opined that Plaintiff retained the ability to work, notwithstanding her impairments. (Record at 325-329.) Thus, we find that Dr. Bohn's opinion supports the ALJ's finding that Plaintiff's impairments did not meet or medically equal the criteria of any listings.

The ALJ provided an adequate discussion of the objective medical evidence and Plaintiff's activities throughout his decision. (Record at 15-22.) The ALJ's decision, when read as a whole, demonstrates that the ALJ appropriately considered the applicable listings and found that the criteria for each listing were not met or equaled. As discussed above, we find substantial evidence in support of the ALJ's determination that Plaintiff's impairments did not meet or equal any of the listings. Plaintiff's request for remand as it relates to this issue must be denied.

> **B. The ALJ Correctly Determined That Plaintiff's Obstructive Sleep Apnea, and Fibromyalgia Were Not Severe Impairments.**

Administrative law judges are responsible for reviewing the evidence and making findings of fact and conclusions of law. These findings of fact and conclusions of law have been incorporated into the five step sequential evaluation process. As discussed infra, step two of the sequential evaluation process requires the ALJ to determine "whether the claimant has a medically severe impairment or combination of impairments." Bowen v. Yuckert, 482 U.S. 137, 140-41, 107 S. Ct. 2287, 96 L. Ed.2d 119 (1987). A claimant may be found not disabled at step two, if the ALJ determines that the claimant does not suffer from a medically determinable severe impairment. In the present case, the ALJ determined that Plaintiff's obstructive sleep apnea and fibromyalgia were not medically determinable severe impairments.[5] (Record at 15-

---

[5] The ALJ also determined that Plaintiff's glaucoma was not a severe impairment. (Record at 16.) Plaintiff, however, does not appear to dispute this aspect of the ALJ's decision.

16.) Having conducted an independent and thorough review of the evidence, we find the ALJ's decision regarding Plaintiff's obstructive sleep apnea and fibromyalgia is supported by substantial evidence of record.

The ALJ explicitly reviewed the medical record relevant to Plaintiff's obstructive sleep apnea (Record at 16), and the ALJ's conclusions regarding this alleged impairment are supported by substantial evidence of record.  More specifically, with respect to obstructive sleep apnea, the ALJ stated as follows:

> The Administrative Law Judge does not find obstructive sleep apnea, which was diagnosed by means of polysomnogram done in September 2010, to be a severe impairment.  Despite repeated complaints of symptoms (fear to go to sleep because of the diagnosis, difficulties sleeping, sleeping few hours, occasional daytime somnolence) and numerous reminders of the importance of following up for the problem from physicians, the claimant has yet to do so.  Although she 'expressed understanding of the importance of following up for CPAP [continuous positive airway pressure machine] titration and tells me [rheumatologist Dunham] she will do so' (Exhibit 17F/3), she does not use a continuous positive airway pressure machine.  (Exhibits 7F, 8F, 14F/2, 15F, 17F.)  Therefore, the claimant has not followed prescribed treatment that may well improve this impairment.

(Record at 16.)

With respect to fibromyalgia, we agree with Defendant that just because the ALJ did not specifically mention fibromyalgia in his step two discussion, it does not render the decision defective.  (Def. Br. at 12.)  An ALJ's decision need not use particular language, and the decision should be "read as a whole." See Jones, 364 F.3d 501, 505 (3d Cir. 2004).  As correctly noted by Defendant, it is apparent that Plaintiff's alleged joint pain due to fibromyalgia was

subsumed in the ALJ's analysis of Plaintiff's sarcoidosis, which was found to be a severe impairment. (Record at 16-17, 20-22.) More specifically, when discussing sarcoidosis, the ALJ explicitly noted as follows:

> She began treating with Mary Elizabeth Kreider, MD in August 2010 with complaints of a lot of fatigue, constantly being out of breath, and joint pains.
>
> . . .
>
> Dr. Kreider noted sarcoidosis that had 'not been well characterized' and the claimant now with many complaints '. . . that may or may not be related to sarcoidosis.' (Exhibit 15F/6.) (Exhibits 6F and 15F.)
>
> Given the multiple joint complaints ('all of them' per the claimant), Dr. Kreider indicated, 'I even wonder if the joint complaints are really sarcoidosis or something more like fibromyalgia' and referred the claimant to a rheumatologist in 2011. (Exhibit 15F.) When the specialist, Jonathan Dunham, MD examined the claimant in September 2011 after the claimant failed to appear for the initially scheduled appointment in June 2011, he noted that, although the claimant had 'most fibromyalgia tender points, she was well appearing, in no acute distress, had lungs clear to auscultation, and good range of motion of the extremities. Dr. Dunham additionally noted that, '. . . while she carries the diagnosis of sarcoid, I do not see evidence of an inflammatory arthritis or periarthritis on exam[ination] today to implicate sarcoid as the cause here.' Neither was there evidence of inflammatory synovitis, despite the tender point findings. (Exhibit 17F.)

(Record at 16-17.) Dr. Dunham determined that Plaintiff's diffuse joint pain appeared to be related to a non-inflammatory cause such as fibromyalgia. (Record at 443.) Dr. Dunham prescribed Plaintiff a low-dose muscle relaxant (Flexeril 10mg), and instructed her to undergo additional laboratory testing, but there is no evidence that Plaintiff actually followed up with the

recommendation for further testing.  (Record at 443.)

As noted above, disability is not determined merely by the presence of impairments, but rather on the functional restrictions the impairments place on an individual. See Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).  Plaintiff must establish that her alleged impairments result in functional limitations so severe that they preclude her from engaging in any substantial gainful activity.  See Dupkunis v. Celebrezze, 323 F.2d 380 (3d Cir, 1963); Gardner v. Richardson, 383 F. Supp. 1 (E.D. Pa. 1974).  In addition, when making a decision, the Commissioner is entitled to rely not only on what the record says, but also on what it does not say.  Diaz v. Shalala, 59 F.3d 307, 315 (2d Cir. 1995); see also 42 U.S.C. § 423(d)(5).  Notably absent from the record in this case are any assessments or reports from Plaintiff's treating physicians that indicate that Plaintiff has any functional limitations resulting from her obstructive sleep apnea or fibromyalgia with respect to the relevant time period.  20 C.F.R. §§ 404.1520(c), 416.920(c).

We further find that Plaintiff's claim is without merit because the ALJ did not conclude the disability determination inquiry at step two.  Rather, the ALJ determined that Plaintiff had the following severe impairments: sarcoidosis, obesity, major depression, and anxiety disorder (Record at 15), and then continued to proceed through the remaining steps of the sequential evaluation process.  (Record at 16-24.)  Accordingly, the integrity of the ALJ's analysis remained intact.  See Salles v. Comm'r of Social Security, 229 F. App'x 140, 145 n. 2 (3d Cir. 2007) ("Because the ALJ found in Salles' favor at Step Two, even if he had erroneously concluded that some of her other impairments were non-severe, any error was harmless.") citing, Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005); Rivera v. Comm'r of Social Security,

164 F. App'x 260, 261 n. 2 (3d Cir. 2006) (same). Plaintiff has failed to show how the outcome of this case would be different had her obstructive sleep apnea and fibromyalgia been found severe at step two. Accordingly, for all of the foregoing reasons, we conclude that the ALJ's decision regarding Plaintiff's obstructive sleep apnea and fibromyalgia is supported by substantial evidence of record.

### C. The ALJ Appropriately Considered Plaintiff's Obesity.

Plaintiff alleges that the ALJ's decision is not supported by substantial evidence because the ALJ did not properly weigh her morbid obesity in combination with her other impairments at step three of the five-step sequential process. (Pl. Br. at 12-14.) Plaintiff refers to Diaz v. Commissioner of Social Security, 577 F.3d 500, 504 (3d Cir. 2009), which provides that "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." For the following reasons, we disagree with Plaintiff, and conclude that the ALJ did properly consider all of the evidence relating to Plaintiff's obesity in combination with her other impairments, particularly at step three.

At step two of the sequential process, the ALJ explicitly determined that Plaintiff's obesity was a severe impairment. (Record at 15; Finding No. 3.) In so doing, the ALJ noted that Plaintiff "is obese weighing well over 200 pounds on a 5'9" frame." (Record at 15.) At step three in the process, the ALJ specifically noted his duties with respect to evaluating obesity by stating as follows:

> Social Security Ruling (SSR) 02-1 p requires
> Administrative Law Judges to consider obesity in
> determining whether claimants have medically

> determinable impairment that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity of the claimant. The Clinical Guidelines issued by the National Institutes of Health define obesity as present in general where there is a body mass index (BMI) of 30.0 or above. BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters ($kg/m^2$). The Administration will generally rely upon the judgment of a physician as to whether an individual is obese.

(Record at 17.)

The ALJ went on to discuss how obesity might have an adverse impact upon co-existing impairments, and then specifically stated as follows with respect to Plaintiff:

> At the hearing the claimant advised that she weighed 275 pounds. She stands 5'9". This would equate to a body mass index of 40.6  These considerations were taken into account in reaching the conclusions herein.  However, the claimant has not established that this impairment has imposed any significant limitations on her ability to perform basic work activities and is a severe  impairment.

(Record at 17.)  The ALJ also commented that "[n]o treating source has found [Plaintiff] significantly limited or disabled by her impairments." (Record at 22.)  Given the foregoing, it is clear, despite Plaintiff's argument to the contrary, that her obesity impairment was considered at step three of the sequential evaluation process.  The ALJ also specifically noted that he considered any additional and cumulative effects of Plaintiff's obesity on her other body systems. (Record at 17.)  At step four, the ALJ reduced Plaintiff's physical residual functional capacity ("RFC") to the modest demands of sedentary work with environmental limitations (Record at 20-22; Finding No. 5), which we find adequately accounted for Plaintiff's obesity.

Plaintiff's reliance on Diaz is inapposite to the particular facts of this case. For starters, the Third Circuit in Diaz acknowledged that controlling case law "does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Diaz, 577 F.3d at 504 (quoting Jones, 364 F.3d at 505). In Diaz, the ALJ found that the claimant's obesity was a severe impairment at step two of the sequential evaluation process, but did not even discuss Plaintiff's obesity in his RFC determination. Id. at 504; see also Diaz v. Commissioner of Social Security, No. 07-790, 2008 WL 3154744, at *14 (D.N.J. Aug. 4, 2008) ("The ALJ did not discuss Plaintiff's obesity in determining her residual functional capacity at step four.").

In this matter, however, the ALJ acknowledged Plaintiff's obesity in determining Plaintiff's RFC by explicitly considering Plaintiff's testimony "that she weighed 275 pounds and stands 5'9'." (Record at 17.) Significantly, and unlike the claimant in Diaz, Plaintiff here did not allege disability based on obesity when she filed her application, nor has she identified any additional limitations the ALJ should have included to account for her obesity. (Record at 193). As noted above, because the ALJ clearly found Plaintiff's obesity to be a severe impairment, and considered it at the subsequent steps in the sequential evaluation process, we conclude that Diaz is distinguishable, and Plaintiff's argument fails.

V. **CONCLUSION**

Having reviewed the evidence of record, we find it is clear that substantial evidence exists to support the opinion and conclusions of the ALJ as to this Plaintiff's alleged disability. Plaintiff has failed to demonstrate that there was some medically determinable basis for an impairment that prevented her from engaging in any substantial gainful activity. 42 U.S.C. § 423(d)(1). Because substantial evidence supports the ALJ's finding of non-disability, the ALJ's decision should be affirmed. Therefore, I make the following:

**RECOMMENDATION**

AND NOW, this   16th   day of September, 2015, it is RESPECTFULLY RECOMMENDED that the relief sought by Plaintiff be DENIED and the decision of the Commissioner of Social Security be AFFIRMED.

BY THE COURT:

_/s/ Henry S. Perkin_
HENRY S. PERKIN,
United States Magistrate Judge